# United States District Court
## For the Western District of Virginia
### Harrisonburg Division

|                                                      |   |                              |
|------------------------------------------------------|---|------------------------------|
|                                                      | ) | Civil No. 5:11cv00103        |
| **JOHN J. DUFF,**                                    | ) |                              |
|     *Plaintiff,*                 | ) |                              |
|                                                      | ) | **REPORT AND**               |
| v.                                                   | ) | **RECOMMENDATION**           |
|                                                      | ) |                              |
| **MICHAEL J. ASTRUE,**                               | ) | By: Hon. James G. Welsh      |
| Commissioner of the Social Security Administration   | ) | U. S. Magistrate Judge       |
|                                                      | ) |                              |
|     *Defendant*                  | ) |                              |
|                                                      | ) |                              |

The plaintiff, John J. Duff, brings this civil action challenging a final decision of the Commissioner of the Social Security Administration ("the agency") denying his applications for a period of disability and disability insurance benefits ("DIB") [1] under Title II and for Supplemental Security Income ("SSI") [2] under Title XVI of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416 and 423 and 42 U.S.C. §§ 1381 *et seq.*, respectively. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g).

The record shows that the plaintiff originally filed his claims for DIB and SSI on May 27, 2009. (R.10,132-135,136-141). Therein, he alleged that he became disabled on June 15, 2008 due to "headaches every day, always feeling down, crying, and [being] snappy."

---

[1] The plaintiff's insured status for DIB expires on December 31, 2012. (R.10,22,135,146).

[2] The plaintiff's period of eligibility for SSI extends through the date of the ALJ's April 26, 2011 decision.

(R.132,136,166,171). Both claims were denied initially, on reconsideration, and for a third time following an administrative hearing by written decision dated April 26, 2011. (R.10-21,31-48,49-63,70-80,52,55-63,68-113,418-451). After unsuccessfully seeking Appeals Council review (R.1-6,127-131), the unfavorable ALJ decision now stands as the Commissioner's final decision. *See* 20 C.F.R. §404.981.

Along with his Answer (Dkt. # 9) to the plaintiff's Complaint (Dkt. # 2), the Commissioner has filed a certified copy of the Administrative Record ("R."), which includes the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By standing order this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Both parties have since moved for summary judgment; each has filed a supporting memorandum of points and authorities, and the views of counsel have been heard.

## I. Summary and Recommendation

On appeal the plaintiff contends that the ALJ's non-disability determination is not supported by substantial evidence for two principle reasons. First, he contends the ALJ's credibility assessment of his testimony is logically flawed and not based on substantial evidence. (Dkt. # 12, pp. 5-6). Second, he argues that the ALJ's failure fully and appropriately to assess his somatoform disorder in accordance with the applicable listing [3] at the third step of the

---

[3] The Listing of Impairments ("the listings") is in appendix 1 of subpart P of part 404 of 20 C.F.R. For each of the major body systems, it describes impairments the agency considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. § 404.1525.

2

agency's decisional sequence is also a fatal flaw requiring reversal and remand. (Dkt. # 12, pp. 6-7). For the reasons that follow, these arguments are meritorious and require reversal of the Commissioner's final determination and a remand of the case for further administrative consideration consistent herewith.

## II. Standard of Review

The court's review in this case is limited to determining whether the Commissioner's factual findings are supported by substantial evidence and whether they were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2$^d$ 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2$^d$ 640, 642 (4th Cir. 1966). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'" *Hays v. Sullivan*, 907 F.2$^d$ 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2$^d$ at 642). The court is "not at liberty to re-weigh the evidence . . . or substitute [its] judgment for that of the [ALJ]." *Johnson v. Barnhart*, 434 F.3$^d$ 650, 653 (4th Cir. 2005) (internal quotation marks omitted). While this standard is high, if the ALJ's determination is not supported by substantial evidence or if he has made an error of law, the district court is equally obligated to reverse the decision. *Coffman v. Bowen*, 829 F.2$^d$ 514, 517 (4th Cir. 1987).

## III. Evidence Summary

3

## Work History and Vocational Profile

At the time the plaintiff alleges his disability began, he was thirty-eight years of age.[4] (R.112,132,136,166,206). His education ended after the 10th grade, and he has not worked since his alleged disability onset date. (R.12,171,176). His past relevant employment was mostly unskilled entry level work that included jobs as an assembly catcher, construction laborer, lawn maintenance laborer, dishwasher, fast food restaurant cook, carpet cleaner, and convenience store cashier. (R.40-41,178-185,231-232). Most of these jobs required a light level of exertion;[5] however, as the vocational witness noted at the hearing, carpet cleaning and dishwashing generally require a significantly higher level of exertion. (R.40-41).

## Medical History

Prior to his alleged disability onset, the plaintiff's medical history includes his having sustained a traumatic head injury and pedicle fractures of the lumbosacral and thoracic spine, when he fell from a moving pickup truck in 1991. (R.303,305,390,392,422). Although the record does not include the details concerning the either the extent of these injuries or the extent of any related treatment, it does show that the head injury was sufficiently serious to require his emergency transport to Roanoke, to require a surgical opening of his cranium (craniotomy), and

---

[4] At this age the plaintiff is classified as a "younger person," and pursuant to the agency's regulations age is generally considered not to affect seriously a younger person's ability to adjust to other work. 20 C.F.R. §§ 404.1563(c) and 416.920(c).

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [an individual] must have the ability to do substantially all of these activities. If someone can do light work, [the agency has determined] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. 404.1567(b) and 416.967(b).

4

to require both a period of inpatient hospitalization, and a period of rehabilitation at Woodrow Wilson Rehabilitation Center in Fishersville, Virginia. (R.303,305,381,390,392,422).

By history, mental health evaluations at Comprehensive Health Services in October 2002 (R.305-308) and at Valley Community Services Board in June 2007 (R.421-424) show that the plaintiff reported having begun to experience symptoms of depression in the early to mid-1990s and his reports of having experienced "at least two classic depressive episodes" by August 2001. (R.301). These and other medical and mental health-related records dated before his alleged disability onset date also record the plaintiff's complaints of significant ongoing depression, recurrent headaches, trouble sleeping and back pain. (R.289-310,377-393,396-400,421-424). They record a principal working mental health diagnosis of generalized anxiety and major depressive disorders; they document a pharmacologic treatment regime with generally positive results, and they show his increasing abuse of alcohol. (*Id.*).

On March 20, 2008 the plaintiff was seen first at Stonewall Jackson Hospital and then in the emergency room at Augusta Medical Center with suicidal thoughts. (R.321-324,344). Application was made for a temporary detention order ("TDO"), and the plaintiff was admitted to AMC Crossroads for mental health treatment; however, he left the hospital the following day before the TDO could be obtained. The discharge note shows that the time he was taking Celexa for his depression and the working mental health diagnosis at the time was that the plaintiff had a major depressive disorder with psychotic features. (R.344-345).

5

Although he received a prescription for Prozac through his primary care physician in April (R.377-378), the plaintiff did not seek any follow-up psychiatric care until May 19, 2008. (R.356-358,425-427). When seen on that date by a staff psychiatrist at Valley Community Services Board ("VCSB"), he reported "some" continuing difficulty with depression and anxiety; he denied having any active or passive suicidal or homicidal thoughts; he reported having used no alcohol for about 17 months, and he denied any illicit substance abuse. (R.356,425). At that time his condition was determined to be consistent with "mild to moderate depression; " he was assessed to be "somewhat receptive to treatment," and his level of functioning was assessed to be 50 on the GAF rating scale.[6] (*Id.*).

Complaining of recurrent depression and feeling overwhelmed at times, the plaintiff saw Samuel Hostetter, M.D., his primary care physician, on September 15, 2008. (R.375-376). At that time he was taking no medications, and Celexa was prescribed.

Consistent with his history of erratic mental health treatment and a persistent failure to follow-through with medications, Dr. Hostetter's records show that the plaintiff did not again see him until June 2009 and thereafter only in January 2010, in August 2010 and in January 2011. (R.370-374,431-434,456-458). On these occasions he continued to exhibit poor hygiene, evidence of depression, medication noncompliance, and a failure to return for follow-up appointments. (R.373,375,377,431). Based on this same failure to follow-through with

---

[6] The Global Assessment of Functioning, or GAF, scale ranges from 0 to 100 and considers psychological, social and occupational functioning on a hypothetical continuum of mental health illness. Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. Text Rev. 2000) (hereinafter "DSM-IV-TR"). A GAF of 41-50 indicates that the person has serious symptoms, or serious impairment in social, occupational or school functioning. (*Id.*). A GAF rating, however, has no direct legal or medical correlation to the severity requirements in the Commissioner of Social Security's regulations, and a GAF score, therefore, is not dispositive on the issue of disability. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009); *Oliver v. Comm'r of Soc. Sec.*, 415 Fed. Appx. 681, 684 (6th Cir. 2011).

6

treatment, VCSB lost contact with the plaintiff and he was discharged from its program in May 2009. (R.353-355). Although his participation in the VCSB treatment program was subsequently restarted in 2010, it too was prematurely terminated on the basis of the plaintiff's "deci[sion] to drop-out of treatment." (R.415-420).

## Opinion Evidence

Based on his November 2009 examination and a review of the medical record, Joseph Cianciolo, Ph.D., a consulting psychologist, assessed the plaintiff to have a mildly recurring major depressive disorder, to exhibit borderline intellectual functioning, and (both currently and over the preceding year to be functioning at a GAF level of 45. (R.359-361). In his opinion the plaintiff 'appeared" capable of performing simple repetitive tasks; however, based on the results of his examination he found the plaintiff's ability to maintain regular attendance, his ability to perform work activities consistently, his ability to interact appropriately with coworkers and the public, and his ability to cope with routine stressors all to be "moderately compromised." (R.361). He also noted that the plaintiff would likely need additional workplace supervision and that any significant change in the plaintiff's condition should be viewed as "guarded." (*Id*.).

Based solely on separate reviews of the medical record in November 2009 and in June 2010, two state agency medical reviewers concluded that the plaintiff retained the functional ability to perform a wide range of work with only moderate limitations related to pace and persistence. (R.235-254,255-276). Although both reviewers stated in their respective explanations that they gave "great weight" to Dr. Cianciolo's psychological examination findings, both of these non-treating, non-examining physicians rejected his mental health related

residual functional capacity assessment on the basis of the plaintiff ability to walk to Dr. Cianciolo's office without assistance and to attend to his daily living activities. (R.240,250,261,272).

Also in the record are treating medical source statements from Dr. Hostetter, the plaintiff's primary care physician, dated March 18 and December 30, 2010. (R.404-409,435-436). Based most specifically on the plaintiff's documented medical history of "mood problems and chronic headaches," his attendant "difficult[y] . . . follow[ing] through and remember[ing] instructions," his "anger management issues related to his mood disorder," his "poor attention span" and his "poor impulse control," in Dr. Hostetter's opinion these chronic mental health issues would represent significant impediments to the plaintiff's functional ability to complete even a normal work day. (R.402-402,426).

At the administrative hearing the ALJ also heard vocational testimony from Gerald Wells. Ph.D. (R.40-44). Asked by the ALJ to assume an individual with the plaintiff's vocational profile and the functional ability to perform "simple unskilled sedentary jobs" that did not require one to be around dangerous machinery, Dr. Wells identified jobs such as "sorters and inspectors" that such an individual could perform. (R.42-43). To be employable, Dr. Wells also noted that such a hypothetical individual would also have to be able to work a daily 8-hour shift and not miss more than one day's work each month. (R.43).

IV.     Analysis

A.

On appeal the plaintiff's first assignment of administrative error is based on the ALJ's use of circular reasoning in making his assessment of the plaintiff's testimonial credibility. (Dkt, #12, p. 5). As he argues in his brief, the ALJ's written decision finding [7] that his testimony was less than fully credible was based entirely on the ALJ's own conclusion that he retained the ability to work on a regular and sustained basis. In other words, the ALJ assumed that which he wished to prove --- the logical fallacy of *petition principii*. By resorting to this form of circular reasoning, the ALJ credibility finding is simply an assertion by him that his functional capacity assessment is a true statement and any contrary statement is, therefore, untrue. Manifestly, an ALJ's credibility statement cannot be used to prove itself. Its premise lacks a source of reason for its truth different from that of the conclusion. Thus premised on a logical fallacy, the conclusion is not based on substantial evidence. [8]

**B.**

The plaintiff next argues that the ALJ erred by failing to find his mental health condition either to meet or medically equal the agency's listing § 12.07 [9] for somatoform [10] disorders. On

---

[7] "Overall, I find that the claimant's medically determinable impairments could be reasonable expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [my non –disability] residual functional capacity assessment." (R.18).

[8] *See Edelson v. Soricelli,* 610 F.3$^d$ 131, 133 (3rd Cir. 1979) ("The essence of our legal tradition is that the beginning point of legal reasoning, or, stated syllogistically, the major premise must not be a statement of the suggested conclusion because to engage in this practice is to indulge in *petitio principia*, more colloquially referred to as 'begging the question.' By whatever label, it is a process of circular reasoning that fails to prove the initial thesis propounded and uses the argued thesis as proof of itself.").

[9] "**12.07 Somatoform disorders**: Physical symptoms for which there are no demonstrable organic findings or known physiological mechanisms. The required level of severity for [somatoform] disorders is met when the requirements in both A and B are satisfied. **A**. Medically documented by evidence of one of the following: **1**. A history of multiple physical symptoms of several years duration, beginning before age 30, that have caused the individual to take medicine frequently, see a physician often and alter life patterns significantly; or **2**. Persistent nonorganic disturbance of one of the following: **a**. Vision, or **b**. Speech; or **c**. Hearing; or **d**. Use of a limb; or **e**. Movement and its control (e.g., coordination disturbance, psychogenic seizures, akinesia, dyskinesia; or **f.** Sensation (e.g., diminished or heightened); or **3.** Unrealistic interpretation of physical signs or sensations associated with the

9

review, therefore, the court must determine whether the ALJ identified the relevant listed impairment and compared its criteria with the evidence and the plaintiff's symptoms. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir 1986) ("Without such an explanation, it is simply impossible to tell whether there was substantial evidence to support the determination."); *Beckman v. Apfel*, 2000 U.S. Dist LEXIS 19180, *26 (DMd. Dec, 15, 2000) ("where there is ample factual support in the recordfor a particular listing, the ALJ must provide a full analysis to determine whether the claimant's impairment meets or equals the listing") (internal quotation marks omitted).

In his decision the ALJ expressly considered whether the plaintiff's mental health condition met or equaled the criteria of listing 12.04; [11] however, similar consideration was made to determine whether the plaintiff's mental impairment met or equaled listing 12.07. To support his argument that this failure constitutes reversible error, the plaintiff cites his closed head injury at age 22 and resulting depression, headaches and syncopal episodes as meeting the A.1. criteria of Listing 12.07; he references the evidence of his "persistent" non-organic disturbance of movement and control (fainting and headaches) as meeting the A.2. criteria, and he cites his documented daily living restrictions, social functioning difficulties, obsessive

---

preoccupation or belief that one has a serious disease or injury; AND **B.** Resulting in at least two of the following: **1**. Marked restriction of activities of daily living; or **2**. Marked difficulties in maintaining social functioning; or **3.** Marked difficulties in maintaining concentration, persistence, or pace; or **4.** Repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, Appx. 1.

[10] Somatoform means "denoting physical symptoms that cannot be attributed to organic disease and appear to be of psychic origin." Dorland's Illustrated Medical Dictionary 1734 (32nd ed. 2012).

[11] **12.04 Affective disorders**: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation. 20 C.F.R. Pt. 404, Subpt. P, Appx. 1.

ruminations, confusion, impulse control issues, cognitive limitations and attention deficits as meeting this listing's B. criteria. (Dkt. # 12, pp. 6-7) (*see also* R. 438-453,455-464,466-467,475).

With the plaintiff's specific allegation that his condition meets or equals listing 12.07 and with his citation of specific supporting evidence, the ALJ should have expressly considered at step three of his sequential evaluation whether the plaintiff's condition meets or equals this mental impairment listing. Without such an administrative analysis, it is not possible for the court to determine on review whether the plaintiff's mental impairment is or is not based on substantial evidence. *Myers v. Califano*. 611 F.2$^d$ 980, 983 (4th Cir, 1980) ("Unless the [Commissioner] explicitly indicates the weight given to all the relevant evidence, [the court] cannot determine on review whether the findings are supported by substantial evidence.").

### V.     Proposed Findings of Fact

As supplemented by the above summary and analysis and on the basis of a careful and thorough examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. The Commissioner's determination that the plaintiff was not disable through the date of the ALJ's decision is not supported by substantial evidence;

2. The Commissioner has not met his burden of proving that through the date of the ALJ's decision the plaintiff possessed the residual functional ability to perform work which existed in significant numbers in the national economy;

3. The ALJ erred in making his credibility assessment of the plaintiff's testimony;

11

4. The ALJ erred in failing to consider expressly whether the plaintiff's mental health impairment met or equaled listing 12.07;

5. Outright reversal and remand simply for the calculation and award of benefits is not appropriate in this case because additional fact-finding is necessary in order to establish a disability onset date; and

6. The final decision of the Commissioner should be reversed and the case remanded pursuant to Sentence Four of 42 U.S.C. § 405(g) 6 for further consideration consistent with this Report and Recommendation and, if necessary, for further development of the record.

## VI. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED as follows: the summary judgment motions of the respective parties should be DENIED; the Commissioner's decision denying benefits be VACATED; the case be REMANDED pursuant to Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendation.

Should the remand of this case result in the award of benefits, plaintiff's counsel should be granted an extension of time pursuant to Rule 54(d)(2)(B) which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b) until thirty (30) days subsequent to the receipt of a notice of award of benefits from the agency; provided, however, any such extension of time would not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.

The clerk is directed to transmit the record in this case immediately to the presiding district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

## VII. Notice to the Parties

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: the 30th day of November 2012.

/s/ *James G. Welsh*
United States Magistrate Judge